# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| **JENNIFER M. RIOS VALENTIN, et al.,**<br>    **Plaintiffs,**<br><br>**v.**<br><br>**WALMART PUERTO RICO, INC.,**<br>    **Defendant.** | **Civil No. 16-1694 (ADC)** |

## OPINION AND ORDER

Plaintiffs Jennifer Ríos Valentín ("Ríos"), her husband Javier García Santiago ("García"), and the Conjugal Partnership composed by them (collectively referred to as "plaintiffs"), filed a complaint against defendants Walmart Puerto Rico, Inc. ("Walmart", "defendant" or "the company") alleging unlawful discrimination and retaliation in violation of numerous federal and Commonwealth of Puerto Rico ("Commonwealth") laws. **ECF No. 1** at 1. Specifically, the claims are brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12117 *et seq.*, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). *Id.* Plaintiffs also invoke this Court's supplemental jurisdiction over violations of the following laws: Act No. 100 of June 30, 1959, P.R. Laws Ann., tit. 29, § 146 *et seq.* ("Law 100"); Act No. 45 of April 18, 1935, P.R. Laws Ann., tit. 11, § 7 *et seq.* ("Law 45"); Act No. 44 of July 6, 1985, P.R. Laws Ann., tit. 1, § 501 *et seq.* ("Law 44"); Act No. 115 of December 21, 1991, P.R. Laws Ann., tit. 29, § 194 *et seq.* ("Law 115"); Act No. 80 of May 30, 1976, as amended, 29 P.R. Laws Ann., tit. 29, § 185a et seq. ("Law 80"); and Article 1802 of the Commonwealth of P.R. Civil Code, P.R. Laws Ann.,

tit. 31, § 5141 ("Article 1802"). *Id*. at 1-2. In essence, Plaintiffs seek monetary and declaratory relief to remedy alleged discrimination, harassment, retaliation, and mental and emotional suffering, *Id*. at 7-9, "by reason of plaintiff[s'] opposition and participation against defendant's unlawful employment practices," *Id*. at 1. Specifically, plaintiffs allege that Ríos was subject to discrimination, retaliation and harassment in employment, including dismissal, due to co-plaintiff García's and Ríos's various administrative and judicial claims against Walmart filed from January 2011 to May 2015. *Id*.

Before the Court are defendant's (i) motion for summary judgment, **ECF No. 39**; (ii) statement of uncontested facts, **ECF No. 39-1**; (iii) memorandum of law in support thereof, **ECF No. 37**; and (iv) reply brief, **ECF No. 65**; as well as plaintiffs' (v) memorandum of law in opposition, **ECF No. 56**; (vi) responses and objections to defendants' statement of uncontested facts, **ECF No. 54**; and (vii) sur-reply brief, **ECF No. 71**. For the reasons discussed below, Walmart's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

## I. Preliminary Matters

The Court notes that plaintiffs' opposing statement of facts is thirty-four pages long. **ECF No. 54**. This almost doubles the length of defendant's statement of uncontested facts, which has eighteen pages. **ECF No. 39-1**. The reason for plaintiffs' lengthy opposing statement is that it fails to comply with this Court's Local Rules, specifically its anti-ferret rule. Local Civil Rule 56(c) states, in pertinent part, "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts." However, most

of plaintiffs' opposing statements are far from concise and nothing close to short. *See* **ECF No. 102-1** at ¶¶ 11, 12, 16, 28, 32, 34, 43, 53, 60, 62, 69, 71, 87. Indeed, some of the opposing statements are a page long or more. *Id*. at ¶¶ 64, 70, 73, 76, 98, 99, 106, 17-28, 30, 35, 38, 45, 57. Moreover, plaintiffs' opposing statements are not only lengthy, but also replete with supplemental information, improper editorialization and attorney argumentation, in clear violation of applicable rules. *See Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 57 (1st Cir. 2011) ("Local Rule 56 is in service to Federal Rule of Civil Procedure 56."); *see also CMI Capital Mkt. Inv., LLC v. González–Toro*, 520 F.3d 58, 62 (1st Cir. 2008) ("The purpose of this rule is to relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute. Like Rule 56 itself, the local rule makes clear that its focus is on facts, not speculation or argumentation. Moreover, these facts must be material."). Much of the information that plaintiffs submit in support of their denials, or partial denials/qualifications, to defendants' statements of uncontested facts simply adds facts to each of defendant's statements. Such additional information should have been filed through separate opposing statements, as required under L. Civ. R. 56(c). Moreover, L. Civ. R. 56(e) provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. . . The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced by the parties' separate statement of facts."

The First Circuit Court of Appeals has long held "with a regularity bordering on the monotonous that parties ignore the strictures of an 'anti-ferret' rule at their peril." *Puerto Rico American Ins. Co. v. Rivera-Vázquez*, 603 F.3d 125, 131 (1st Cir. 2010); *see also Ruiz-Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir. 2000) ("absent such rules, summary judgment practice could too easily become a game of cat-and-mouse, giving rise to the 'specter of district court judges being unfairly sandbagged by unadvertised factual issues.'") (quoting *Stephanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 931 (1st Cir. 1983)). Consequently, the Court will disregard plaintiffs' statements that do not comply with the Local Rules and/or attempt to create a controversy of fact with editorials and attorney argument masked as opposing or additional statements of uncontested facts. *See* summary of standards under Fed. R. Civ. P. 56 below. Plaintiff's counsel is an experienced practitioner who has been admonished previously on various occasions for non-compliance with those rules. *See, e.g., Colón v. San Juan Marriott Resort and Stellaris Casino*, 600 F. Supp.2d 295, 305 (D.P.R. 2008); *Santiago-Vázquez v. Walmart Puerto Rico, Inc.*, Civ. No. 14-1425 (ADC) (D.P.R. March 31, 2016), ECF No. 121; and *Martínez-Negrón v. Coca Cola Puerto Rico Bottlers, et al.*, Civ. No. 13-1740 (ADC) (D.P.R. March 31, 2016), ECF No. 61.

## II. Factual Background

Unless otherwise noted, the following relevant facts are derived from defendant's statement of uncontested facts, plaintiffs' responses and objections thereto, and various supporting exhibits insofar as those meet the authentication requirements under Fed. R. Civ. P. 56(e). *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000). Moreover, consistent with the summary

judgment standard, the Court states the facts in the light most favorable to plaintiffs, the non-moving party. *See Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir. 2006). Nonetheless, in accordance with the considerations discussed above, facts proffered by defendant regarding which plaintiffs' denials or qualifications are unsupported by competent evidence that effectively qualifies or controverts defendant's facts are deemed as admitted for the purpose of adjudicating the instant summary judgment motion. L. Civ. R. 56(c) & (e); *see Arroyo-Audifred v. Verizon Wireless, Inc.*, 527 F.3d 215, 219 (1st Cir. 2008).

Ríos began working for Walmart on June 1, 2000, at its Hatillo store. **ECF No. 39-3** at 15. She acknowledged receipt of the Employee Handbook and the Statement of Ethics. **ECF No. 43-1** at 6-7. Among its policies, Walmart has in place a policy against discrimination, harassment and retaliation which prohibits discrimination based on sex and disability, among other protected categories. The policy includes an internal complaint procedure available to employees who consider that they have been discriminated, harassed and/or retaliated against in their employment. **ECF Nos. 39-3** at 5-7**, 43-1** at 2**.** Wal-Mart also has in place a progressive-discipline policy, known by Ríos, which comprises four incremental levels: (a) verbal warning; (b) written warning; (c) one-day of suspension with pay (referred to as "D-Day"); and (d) termination of employment (hereon "dismissal," in accordance with applicable law in Puerto Rico discussed herein). **ECF Nos. 43-1** at 8**-11, 54-1** at 38.

During her employment with Walmart, Ríos received training on various company policies, including Coaching for Improvement, Equal Employment Opportunity, Inappropriate

Behavior and Integrity. **ECF No. 39-3** at 40-59. Plaintiff was trained as well regarding the procedures and requirements pertaining to employees' purchases of Walmart merchandise. **ECF Nos. 39-3** at 40-59, **43-1** at 1-5, 12-14**.** As provided by the same, an employee should never place merchandise which he or she wishes to purchase in the understock, storage or holding areas, but rather, it must be immediately taken to a register and paid for. **ECF No. 39-3** at 34-36. Company policies and procedures are available at Wal-Mart's intranet system known as WIRE, to which all employees have access. *Id*. at 6.

Ríos began her employment at Walmart occupying a part-time position in the photo-printing department. **ECF Nos. 1** at 3, **8** at 2. Subsequently, she held other jobs with Walmart during her employment. **ECF Nos. 1** at 3, **70-7**. Specifically, she was Jewelry Department Manager of the Barceloneta store, referred to as store number 2302, from May 12, 2010, until her dismissal on May 19, 2015**. ECF Nos. 1** at 3, **43-1** at 15-16, 81-82**.** In that position, she was responsible for supervisory functions of her department, including the scheduling of the work hours of associates, the proper handling and accountability of jewelry and other merchandise, the preparation of related reports, and the processing of vendor claims (also referred to as vendor credits) of the Jewelry Department. **ECF Nos. 43-1** at 17-22, **54-1** at 40-41.

On December 29, 2012, Ríos met with her supervisor, Marian Pagán ("Pagán"), for a coaching session during which Ríos was told that she needed to improve in certain areas as Jewelry Department Manager. **ECF Nos. 43-1** at 21-22, **54-1** at 40-41**.** The areas of improvement conveyed included the following: various duties related to the gold and diamond audit report,

timely processing of vendor credits, organization and attractiveness of the sales floor, duties related to layaway cancellations, department schedules, and associate work plans. *Id*. Ríos was placed on a Performance Improvement Plan ("PIP") addressing those duties that required improvement. **ECF No. 43-1** at 23-24.

On April 29, 2013, Ríos received her annual performance evaluation, which rated her work as "meets expectations." Ríos received a positive assessment in the areas of respect for the individual, customer service, sales, communication, dependability, and development of her work force. *Id.* at 25-26. Additionally, the recommended areas of improvement were "organization and planning, operations/credits/merchandise receiving, inventory results, [and] earning**."** *Id.* at 26. In light of the results of the aforementioned performance evaluation, her hourly wage was raised from $14.08 to $14.33. **ECF Nos. 39-3** at 79, **43-1** at 27.  In the employee's comments section of the evaluation, Ríos stated that she was "grateful and proud of the work team that she was working with," and concluded by saying "[t]hank you for all your support and help" and the acronym in Spanish for "God bless you." **ECF No. 43-1** at 27.

Due to the nature of Wal-Mart's retail business, its busiest season of the year starts in November, in preparation for the Black Friday[1] sales event, and ends in the middle of January. **ECF No. 39-3** at 6. Thus, generally, Walmart does not allow employees to take vacation leave

---

[1] Black Friday is "the Friday immediately following Thanksgiving Day that is considered by retailers to mark the beginning of the holiday shopping season." *Merrian-Webster Dictionary*, online version, July 26, 2017, update.

from November until mid-January, and requests for vacation leave during that period are considered on a case-by-case basis. **ECF Nos. 39-3** at 6, **54-2** at 2.

On December 9, 2013, Ríos requested vacation leave from December 21, 2013, until January 4, 2014. Ríos told her supervisor, Pagán, that her husband had gifted her a trip to the United States. **ECF No. 43-1** at 29-31. By then, Ríos had already prepared and posted the work schedule with other associates covering her time off, even though at the time she prepared the schedule, she had not yet requested her vacation leave. **ECF Nos. 43-1** at 29, **54-2** at 2-3. It was not the first time that Ríos had requested, and had been granted, vacation leave during the Christmas season. **ECF No. 43-1** at 32. Pagán requested plaintiff to bring evidence of the plane tickets in order to consider Ríos's vacation request of December 2013. **ECF No. 43-1** at 29. Ríos brought Pagán evidence of the plane tickets, and the vacation leave request was approved. **ECF No. 43-1** at 33-35. Nonetheless, Ríos was informed that the following year, she should not request vacation leave during high-sales-volume dates such as Christmas, because customer service was affected. **ECF Nos. 43-1** at 33-34, **54-2** at 3-4. Ríos was further informed that she would no longer prepare the working schedules of the department associates. *Id*.

On December 15, 2013, Ríos called the acting Store Manager, María Arias ("Arias"), to inquire whether associate Norma Cruz could leave early and close the Jewelry Department at 8:00 p.m. instead of 10:00 p.m. as scheduled. Arias denied the request because of client traffic at the store. **ECF No. 43-1** at 36-37. Notwithstanding Arias's directives, the Jewelry Department was closed early, and Ríos, Cruz and other employees of the Jewelry Department met at 9:00

p.m. at a restaurant to celebrate a holiday gift exchange. **ECF Nos. 43-1** at 36-38, **54-1** at 48-51. Consequently, on December 16, 2013, Ríos received her first-level warning for having deliberately disobeyed a supervisor's order. **ECF No. 43-1** at 36. In the section of the form for employees' comments, Ríos wrote the following: "I clearly understand that it is my responsibility. I think I . . . [was not] clear[] with the girl and there was [an error in] communication. I should have been more precise, clear and I should have coordinated things better. I have never gone above any supervisor and will never do so. My apologies and respect." *Id.*, **ECF No. 39-3** at 87.

On March 11, 2014, Ríos sent a lengthy e-mail to Barceloneta Store Manager Victor Gracia ("Gracia"), who had been transferred to that store the previous month. **ECF Nos. 39-3** at 99, **43-1** at 39-40. She informed him about various aspects of the store and her work, including sales, customer service, position vacancy in the Jewelry Department, vendor credits, and the security room. *Id.* Regarding vendor credits, Ríos stated as follows: "Something very important for jewelry is to make credits on time. Credits are made once per week, on the same day every week. I was processing them every Friday; I no longer do so. It is difficult for me because I'm alone all day and I did not come out very well in the audit." **ECF No. 43-1** at 40. She ended the e-mail by stating as follows: "I have had a very complex history. I have had my bad times at Walmart (which are right now in litigation) and I have had my good times. I can say that [the Barceloneta store, number] 2302 has been a special store with special people. Both Sandra [Rodríguez, People Manager of the Barceloneta Store], and Juan Ramírez [member of management of the

Barceloneta store] have been a source of support and very special people for me in my life, which is a blessing." *Id*.

On April 29, 2014, Ríos received her annual performance evaluation, which rated her work as "meets expectations." She received a favorable assessment in the areas of customer service, associate development, teamwork, communication, inventory, seals and earnings. **ECF No. 43-1** at 41-42. Furthermore, the evaluation noted that Ríos needed to improve her attendance and punctuality as well as her organization skills. *Id*. In light of the results of the aforementioned performance evaluation, her hourly wage was raised from $14.33 to $14.58. *Id*. In the section of the form for employees' comments, Ríos stated as follows: "I will take care of completing operations planning and I will improve my absences. Thank you for everything." *Id.* at 42.

Ríos was scheduled to work on June 29, 2014, at 7:00 am. However, she neither showed up at work nor called to notify of her absence. **ECF Nos. 43-1** at 44-45, **54-2** at 2-9. Consequently, on July 1, 2014, she received a second-level written warning. **ECF No. 43-1** at 44-45. In the associates' comments section, Ríos stated that she forgot, that it would not happen again, and that she would be more attentive. *Id*. at 44.

On June 2014, an audit of the store's operations revealed that the Jewelry Department was not processing vendor credits in a timely fashion. *Id*. at 47. Accordingly, on July 1, 2014, Market Human Resources Manager Carmen Benítez ("Benítez") informed Ríos of the finding and coached her regarding the same. *Id*. A few weeks later, on July 26, 2014, an asset protection review revealed that Ríos had processed a refund in the Jewelry Department, but a manager had

not signed the required authorization slip. *Id.* at 49. Consequently, Ríos was informed of the finding, and Benítez coached her about it. *Id.* On August 2, 2014, as part of an effort by Wal-Mart to individualize the training of its employees, Ríos was asked to identify any training or coaching she needed. *Id*. at 52. She responded that she already possessed "all the knowledge of her work area" and she did not "wish to develop anything further at the moment." *Id.*

During a subsequent review and audit in November 2014, it was found that Ríos had failed to timely process the vendor credits for the week corresponding to Black Friday, from November 23 to 28, 2014. **ECF Nos. 43-1** at 53-56, **54-2** at 13. This was the same kind of vendor-credit violation that had been identified with Ríos in the July 2014 Associate Open Door Record/Associate Interview. **ECF No. 43-1** at 47, 53-56. Accordingly, on December 12, 2014, Ríos received a third-level written warning and D-Day (one-day suspension with pay). *Id.* The warning noted that her failure to process the vendor claims affected the earnings of the store and the business. *Id.* at 53. Ríos was advised as well that any further violation could lead to her dismissal, pursuant to the company's progressive-discipline procedure. *Id.* In her written comments to the warning, Ríos acknowledged that she had not processed the vendor claim corresponding to the week of Black Friday. *Id.* at 53-54. On December 12, 2014, Ríos was placed on a PIP regarding the timely completion of vendor claims. *Id*. at 54. Ríos wrote in the PIP document that "[w]e are on plan so that this will not recur. I am at your service and with help I know that it will not happen again." *Id.* at 56.

On April 14, 2015, Carmen Irizarri Toledo ("Irizarri"), Asset Protection Manager of the Isabela store, conducted an audit of the Jewelry Department of the Barceloneta store in preparation for a store inventory. **ECF Nos. 39-4** at 12, **43-1** at 57, **54-2** at 44-45. According to Irizarri, the audit revealed multiple practices and situations in the Jewelry Department that were not in compliance with company policies and procedures, and she prepared an email detailing her findings to Xiomara Remigio ("Remigio"), Asset Protection Manager, and to Gracia, the Barceloneta Store Manager at that time. **ECF Nos. 39-4** at 12, **43-1** at 57. Among her findings, Irizarri informed to have found new merchandise of the Jewelry Department that was not in the display windows, but rather stored away in a drawer, and that she later saw Ríos purchasing the same. *Id.* In addition, Irizarri informed to have found several unprocessed vendor claims, delayed inventory preparation, an open cash register with cash in it, and a ring on the floor under the display case. *Id.* In light of Irizarri's findings, the company suspected that Ríos was engaging in understocking. *Id.* at 14-16. That practice consists of an employee keeping merchandise unavailable to customers in order for that employee to be able to buy it, be it by layaway or by other means. **ECF No. 43-1** at 5. Understocking constitutes a serious violation of Wal-Mart's policies and procedures. *Id.*

Ríos emphatically denies that she was incurring in understocking as understood by Irizarri. On the contrary, in her deposition under oath, Ríos testified that when Irizarri asked her regarding the merchandise and why it was in the drawer, Ríos explained to Irizarri that the merchandise in question was not new but rather, that the "merchandise was over . . . [and] if it's

over, it's already being shown to the client**."  ECF No. 54-2** at 45. Ríos also denies that there were

unprocessed vendor credit claims at that time. **ECF No. 54-3** at 1.

Walmart directed Remigio to conduct an investigation to verify whether Ríos was

incurring in understocking and/or other violations of company policies and procedures. **ECF

No. 39-4** at 14-16. While said investigation was ongoing, Ríos received her annual performance

evaluation on April 29, 2015, and her performance was rated "below expectations." **ECF No. 43-

1** at 74-75. She received a positive assessment in the following areas: respect for the individual,

customer service, and communication. *Id*. at 74. Moreover, the evaluation stated that the

following areas of performance warranted improvements: attaching the defective-merchandise

forms on all corresponding items; processing vendor claims within the required timeframe;

following up on layaway and special orders; maintaining counters and drawers in a clean and

organized state; and not storing merchandise from other areas within the jewelry department,

*Id*. at 74-75. The evaluation rated her performance as "below expectations." *Id.* In the employee

comments section of the performance evaluation form, Ríos wrote the following: "now we are

working on consistency of vendor claims within the 7 days, and I am eager to improve this and

to continue working with excellence." *Id*. at 75. As a result of her evaluation rated "below

expectations," she did not get a raise in wage, which instead remained the same at $14.58 per

hour. *Id*.

Ríos did not agree with the result of the evaluation of April 29, 2015, specifically with the

fact that her performance for the evaluation period had been rated below expectations, for which

she requested a meeting with management. **ECF Nos. 43-1** at 74-77, **54-3** at 14. On May 8, 2015, Ríos met with manager José Chinea, who informed her that in his view, the evaluation was correct in indicating the areas of her performance that needed improvement. **ECF Nos. 39-4** at 35, **43-1** at 76**.**

On May 15, 2015, upon the conclusion of Remigio's investigation, which according to her, included the review of video footage of surveillance cameras, she informed that Ríos had engaged in understocking, by keeping merchandise unavailable to Wal-Mart customers so that she could later place the merchandise on a lay-away for herself.  **ECF Nos. 39-4** at 14-16, **43-**1 at 78-80. Consequently, Ríos was dismissed on May 19, 2015. **ECF No. 43-1** at 81. In the exit interview form, it was stated that "Associate Jennifer Ríos violated the under stocking (sic) policy. It is conduct considered inappropriate according to the Associate manual and all procedures, [and her] conduct was validated by an [i]nvestigation." **ECF Nos. 43-1** at 81, **39-5** at 1.

Ríos emphatically denies that the reasons for her dismissal were those conveyed to her as summarized in the exit interview form. **ECF No 54-3** at 22-23. She alleges that defendant "discharged her from her position due to her complaints and the discrimination charge filed against the defendant." **ECF No. 1** at 6. Pagán, her supervisor, and Gracia, Store Manager at that time, were the ones who met with her to inform her of her dismissal on May 19, 2015. **ECF No. 54-3** at 22. According to Ríos in her deposition under oath, Pagán told her as follows at the meeting regarding Ríos's dismissal: "See? I told you. This complaint of yours was the straw that

broke the camel's back. These are the consequences of what you do. So gather your things. You're terminated." *Id*. at 22-23. Ríos further testified that Gracia told her at said meeting: "Don't worry. With the complaint, you're going to be fine." *Id*. at 23.

The case's record shows that both Ríos as well as her husband, García, who was a Walmart employee from March 2002 until December 2010, pursued various administrative and judicial claims against Walmart dating back to January 2011, when García filed a charge before the EEOC alleging disability discrimination, sexual harassment, and retaliation. **ECF No. 39-5** at 7. After the administrative phase of García's claim, plaintiffs filed a complaint before the Puerto Rico Court of First Instance, Arecibo Superior Court ("Commonwealth Court") on October 2, 2012. **ECF Nos. 39-1** at 14, **39-6** at 3. The following day, they filed a similar complaint before the U.S. District Court of Puerto Rico. *Id., see also García-Santiago et al. v. Walmart Puerto Rico, Inc.*, Civ. No. 12-1823 (DRD), ECF No. 1. The federal complaint contained a contingent tort claim by Ríos in addition to the main claims by García of disability discrimination, retaliation and sexual harassment under ADA and Title VII. *Id*. at ECF No. 14-2**.** The Commonwealth Court claim was dismissed on May 24, 2013. **ECF No. 43-1** at 84. The federal complaint was dismissed with prejudice on May 8, 2013. *García-Santiago et al. v. Walmart Puerto Rico, Inc.*, Civ. No. 12-1823 (DRD), ECF No. 26. A final motion for reconsideration was denied by the U.S. District Court of Puerto Rico on June 18, 2014. *Id*. at ECF No. 29.

Although the administrative and judicial claims summarized above had been dismissed, on January 16, 2015, García received a communication from his legal counsel informing him of a settlement offer in an EEOC claim against Walmart dating back to October of 2011, titled EEOC *(Griffin Directed Investigation) v. Wal-Mart Stores, Inc*. **ECF Nos. 39-6** at 6-7, 12, **43-1** at 87. García signed a release form and received a settlement check issued by Wal-Mart Stores, Inc., on or around January 23, 2015. *Id*. It is not clear from the instant case's record what relationship, if any, the aforementioned settlement had with plaintiffs' claims against the sole defendant in this case, Walmart Puerto Rico, Inc., which are object of this Opinion and Order.

On May 7, 2015, Ríos filed a charge of discrimination before the EEOC. **ECF No. 43-1** at 88. In her charge, Ríos stated as follows:

> In 2014 I received a negative evaluation which led to a disciplinary plan against me. In May 2015 my evaluation was unsatisfactory. I have been working for 14 years with positive evaluations. In November 2014, my husband was notified of legal compensation in a lawsuit against Walmart. I believe that I am the only department manager subject to an appraisal plan in store 2302. I request confirmation that my disciplinary action has nothing to do with the lawsuit my husband filed against Walmart.

*Id*.

According to Walmart, that charge was notified to them on May 26, 2015—that is, about a week after Walmart's dismissal of Ríos. **ECF No. 39-1** at 13-15. However, according to plaintiffs, the alleged comments cited above evidence that Walmart knew of her EEOC charge, since "[a]t the time of Ríos´ termination all of her previous complaints and the [d]iscrimination [c]harge filed by her husband had been dismissed and/or settled; the only remaining case was [Ríos's]

discrimination charge of May 7, 2015." **ECF No. 54** at 30. Conversely, Walmart contends that the fact that "all the employment actions Ríos complains of occurred years after the husband's EEOC and subsequent [c]omplaints were filed" precludes any "inference of retaliatory animus on the part of Wal-mart." **ECF No. 37** at 14.

On September 9, 2015, Ríos amended her charge before the EEOC to include additional allegations of discrimination and retaliation by Walmart. **ECF No. 70-7** at 2-5. Specifically, she included a statement containing allegations of multiple adverse actions in her employment, including retaliatory discharge and a retaliatory hostile work environment consisting of allegedly derogatory comments, including remarks by Pagán, Ríos's supervisor, and Gracia, Store Manager at the time, in reference to her and García's claims against Walmart. *Id*. Walmart contends that neither the EEOC in their response to Walmart's Freedom of Information Act ("F.O.I.A.") Request, nor plaintiffs in response to Walmart's written discovery requests, produced a copy of Ríos's amended Charge. **ECF No. 65** at 5-6. As such, Walmart asserts that it first found out about it when plaintiffs included a copy of the amended charge in support of their opposition to Walmart's summary judgment motion *Id*. Plaintiffs contend that they did produce the amended charge in question in their responses to Walmart's discovery requests. **ECF No. 71** at 3.

On December 14, 2015, Ríos, through counsel, requested the EEOC that it close the administrative case and issue of a right-to-sue-letter. **ECF No. 70-7** at 1. On January 12, 2016, the EEOC closed Ríos's case, stating that "based on its investigation, the EEOC was unable to

conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge." **ECF No. 39-6** at 15.

Ríos alleges that the aforementioned retaliatory employment actions, remarks and threats of termination by her supervising managers began in 2013 and continued on a bi-weekly basis until she was dismissed in May 2015. **ECF Nos. 1** at 3-7, **54-1** at 15-37, **70-7**. She does not recall the specific dates of the alleged comments. **ECF No. 54-1** at 15-37. The alleged comments were the following:

> (i)     Gracia told Ríos, on occasion of García's filing of the Complaint against Walmart, that: "[i]f that was going to be like that, it wasn't going to go good for [her]." **ECF No. 54-1** at 21.

> (ii)    Gracia told Ríos that she was going to be discharged. *Id*. at 22.

> (iii)   Gracia would ask Ríos about how the lawsuit was going, and told Ríos that "the lawsuit filed will cost you, you are out." *Id*. at 23.

> (iv)    Ríos heard Pagán tell Acting Store Manager María Arias ("Arias"): "[t]o this one, I'm crazy to get rid of her. Since she is suing, she thinks that she can't be fired, but she will see." *Id*. at 17. Arias's response was: "Girl, just get her the hell out." *Id*. at 18.

> (v)     Ríos heard Arias ask Pagán when they were going to get rid of Ríos, and Pagan's response was: "soon." *Id*.

(vi)     Pagán also referred to Ríos as a liar. *Id*. at 19.

(vii)    Pagán told Ríos that: "My God, I'm crazy for you to be out." *Id*. at 27.

(viii)   Pagán told Ríos: "You, you're going to be out.  You're going to be kicked out." *Id*.

(ix)     Pagán told Ríos: "You think because you have a lawsuit you can do whatever you want, but you're going to be out sooner than you think;" "You have little time left;" "You are out of here." *Id*. at 28-29.

(x)      Pagán told Ríos: "make sure you comply with policy . . . you know what's in for you." *Id*. at 33-35.

(xi)     Pagán told Ríos: "I am going to kick you out . . . you are out of here." *Id*. at 36-37.

Ríos asserts that she informed the company, both verbally and by means of emails to Sandra Rodríguez, People Manager of the Barceloneta store, **ECF No. 39-3** at 5, about the litigation against Walmart in which she and her husband were involved, as well as the alleged retaliation related to that litigation. **ECF Nos. 54-1** at 12, **70-3** at 2, 6-8, 11-12. The case's record reveals that the aforementioned emails span from to March 13, 2014, to January 17, 2015. *Id*. Walmart contends that Ríos sent the emails to Sandra Rodriguez to an incorrect email address, for which she did not receive the same. **ECF No. 39-3** at 5-7. Nonetheless, Ríos contends that she informed of the ongoing litigation to other managers, specifically to Gracia. **ECF Nos. 43-1** at 39-40**; 54-1** at 12. The record shows that Ríos communicated in writing about work situations with other company managers in addition to Sandra Rodríguez, including store managers Gracia, Juan Ramírez, and José Chinea. **ECF Nos. 54** at 30-31, **70-3** at 1-3, 14-16.

### III. SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56 ("Rule 56"), "[s]ummary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits." *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008) (quoting the former Fed. R. Civ. P. 56(c)).[2] When ruling on a motion for summary judgment, the court "must scrutinize the evidence in the light most agreeable to the nonmoving party the benefit of any and all reasonable inferences." *Cox III v. Hainey*, 391 F.3d 25, 27 (1st Cir. 2004).

However, the non-movant "must point to competent evidence and specific facts to stave off summary judgment" in order to defeat a properly supported motion for summary judgment. *Tropigas*, 637 F.3d at 56. Thus, the court may "afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Id.* (quoting *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001)). In addition, the "absence of evidence on a critical issue weighs against the party—be it either the movant or nonmovant—who would bear the burden of proof on that issue at trial." *Alamo-Rodríguez v. Pfizer Pharma., Inc.*, 286 F. Supp.2d 144, 151 (D.P.R. 2003) (citing *Pérez v. Volvo Car Corp.*, 247 F.3d 303, 310 (1st Cir. 2001)).

---

[2] While Rule 56 was amended, effective December 1, 2010, "the substantive standard for summary judgment remain[ed] unchanged." *Ahern v. Shinseki*, 629 F.3d 49, 54 n.2 (1st Cir. 2010) (citing Fed. R. Civ. P. 56 advisory committee's note). The primary alteration is the inclusion of a "procedures" section which, in part, incorporates a common procedure for presentation of factual evidence and an anti-ferreting rule, similar to those already in place in this District, into the summary judgment standard. *Compare* Fed. R. Civ. P. 56(c) & (f).

"A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Thompson*, 522 F.3d at 175 (quoting *Sánchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996)) (internal quotation marks omitted). "A fact is material if it has the potential of determining the outcome of the litigation." *Maymí v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008). To defeat a properly supported motion for summary judgment, evidence offered by the non-movant "must be significantly probative of specific facts." *Pérez*, 247 F.3d at 317 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). As a rule, "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vázquez v. López-Rosario*, 134 F.3d 28, 33 (1st Cir. 1998). Finally, it is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252.

## IV.    Discussion[3]

### 1.    Plaintiffs fail to state a cognizable claim of employment discrimination under ADA and Title VII.

Although plaintiffs allege both discrimination and retaliation causes of action pursuant to ADA and Title VII, the instant case is predicated wholly on their allegation that Ríos was subject to adverse employment actions by Walmart, up to and including her dismissal, in retaliation for the various internal, administrative and judicial claims that she and García filed against Walmart. As stated above, the previous cases include, among others, claims by García

---

[3] To avoid repetition, we incorporate by reference in this section the detailed factual account and citations to the case's record included above regarding plaintiffs' and defendant's assertions of material facts.

of disability discrimination and sexual harassment under ADA and Title VII, in which Ríos was co-plaintiff in tort, beginning in January 2011 and ending in June 2014.

However, nowhere in the instant case's complaint does Ríos assert, as required under applicable law, that she was either a member of a protected class under Title VII or a qualified individual under the ADA who was discriminated against in her employment due to her disability and/or membership in a protected group. 42 U.S.C. §§ 12102(2), 2000e-2(a); *see St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993); *Ramos-Echevarría v. Pichis, Inc.*, 659 F.3d 182, 186 (1st Cir. 2011). Thus, insofar as the instant claim is based on Walmart's alleged adverse employment actions against Ríos, not against García,[4] it fails to state a cognizable claim of employment discrimination under either Title VII or the ADA. *Id.*, **ECF Nos. 39-1** at 14**; 39-5** at 7**; 39-6** at 3**; 43-1** at 84**.**

Accordingly, the motion for summary judgment is hereby **GRANTED** regarding plaintiffs' discrimination claims under Title VII and ADA.

### 2. Plaintiffs fail to establish a prima facie case of retaliation regarding alleged employment actions by Walmart prior to Ríos's dismissal

Both ADA and Title VII prohibit retaliation against an employee for, among other grounds, having opposed any practice made unlawful by either law. 42 U.S.C. §§ 12203(a), 2000e-3. A claimant may establish an actionable claim of retaliation with either direct or circumstantial evidence. *DeCAire v. Mukasey*, 530 F.3d 1, 20 (1st Cir. 2008). Absent direct evidence

---

[4] García's sole claim in this case is a contingent tort claim for the alleged damages that he suffered as a result Walmart's adverse employment actions against Ríos.

to establish a prima facie case of retaliation, the plaintiff must show under the McDonell Douglas burden shifting test that: (1) he/she engaged in protected conduct; (2) he/she suffered an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action. *Freadman v. Metro Prop. & Cas. Ins. Co.*, 484 F.3d 91, 106 (1st Cir. 2007); *Thomson v. North American Stainless LP.*, 562 U.S. 170 (2011). In turn, the defendant must articulate a legitimate, non-retaliatory reason for the adverse action, in which case, plaintiff must establish that the proffered reason was pretextual. *Collazo. v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 46 (1st Cir. 2010).

In proper circumstances, the required causal connection may be established by temporal proximity between the relevant events, but the proximity must be very close. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Moreover, "[t]o defeat summary judgment in a retaliation case, a plaintiff must point to some evidence of retaliation by a pertinent decisionmaker." *Sánchez-Rodríguez v. AT & T Mobility P.R., Inc.*, 673 F.3d 1, 15 (1st Cir. 2012). In addition, "the employee must show that the retaliator knew about her protected activity—after all, one cannot have been motivated  retaliate by something he was unaware of." *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 139 (1st Cir. 2013).

As stated above, plaintiffs in the instant case allege that Ríos was subject to retaliation consisting of various adverse employment actions up to and including her dismissal, in violation of Title VII, ADA, and Puerto Rico law, due to the various administrative and judicial claims that Ríos and García filed against Walmart. In turn, Walmart contends that all of the alleged

actions by the company regarding Ríos's employment were due to her reiterated and well documented performance deficiencies and other violations as Jewelry Department Manager, and were executed in accordance with progressive discipline and other company policies known by Ríos.

The parties agree that Ríos incurred in protected conduct—the administrative and judicial claims filed by her and García against Walmart. Thus, plaintiffs have met the first prong of a prima facie case of retaliation. **ECF Nos. 37** at 2-3; **39-1** at 14-16; **54** at 28-30. However, Walmart avers that plaintiffs are unable to establish the second and third prongs, since according to them, the employment actions in question did not constitute adverse employment actions, nor is there any causal link between the employment actions in question and plaintiffs' protected activity.

To be deemed adverse under applicable law, an employment action must substantially affect employment or alter the conditions of the workplace, typically involving discrete changes in the terms of employment such as hiring, firing, failing to promote, and/or lower salary or benefits. *Morales-Vallellanes v. Potter,* 605 F.3d 27, 35-36 (1st Cir. 2010). It must be more disruptive than a mere inconvenience or an alteration of job responsibilities, but rather one in which the employee suffers a material harm or "tangible consequence." *Bhatti v. Trustees of Boston University,* 659 F.3d 64, 73 (1st Cir. 2011); *see also Shervin v. Partners Healthcare System, Inc.,* 804 F.3d 23 (1st Cir. 2015). In that respect, the First Circuit has held consistently that employment actions such as work schedule changes, lateral transfers and negative performance evaluations

in themselves do not constitute actionable adverse employment action unless these entail "a demotion in form or substance." *Marrero v. Goya*, 304 F.3d 7, 23 (1st Cir. 2002); *see also Morales-Vallellanes*, 605 F.3d at 35-36, *Cham v. Station Operators, Inc.*, 685 F.3d 87, 94-95 (1st Cir. 2012); *Colón-Fontánez v. Municipality of San Juan*, 660 F.3d 17, 43 (1st Cir. 2011).

In *Marrero*, 304 F.3d at 25, a case where the plaintiff was transferred from a secretarial position in Goya of Puerto Rico Inc.'s Sales and Export Division to a different secretarial position at the company's Human Resources Department, the First Court provided the following high standard for a transfer to be considered a demotion that amounts to an actionable adverse employment action:

> It is not enough that Marrero felt stigmatized and punished by the transfer. A more "tangible change in duties or working conditions" is needed before we can conclude that the transfer was, in substance, a demotion. *Phillips v. Collings*, 256 F.3d 843, 848 (8th Cir. 2001). As the Eighth Circuit recently explained, the sort of "intensified personal animus, hostility, disrespect, and ostracism" that Marrero alleged here "fails to constitute a material employment disadvantage" sufficient to transform an ostensibly lateral transfer into an adverse employment action. [*Jones v. Fitzgerald*, 285 F.3d 705, 714 8th Cir. 2002]; *see also Manning v. Metropolitan Life Ins. Co.*, 127 F.3d 686, 693 (8th Cir. 1997) (holding that evidence of "disrespect and ostracization by . . . supervisors" did not establish an adverse employment action). Rather, in order to prove that the transfer was materially adverse, Marrero had to show that Goya "[took] something of consequence from [her], say, by ... reducing her salary, or divesting her of significant responsibilities," or that it "with[he]ld from [her] an accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service." *Blackie*, 75 F.3d at 725.

Moreover, when the cause of action being claimed is retaliation, for employment actions to be deemed adverse, they must be "harmful to the point that they could well dissuade a reasonable

worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 57 (2006).

In the instant case, the employment actions prior to Ríos's dismissal alleged by plaintiffs to be adverse entailed:

i)  coaching session and performance improvement plan of December 2012 due to deficiencies in her performance as Manager of the Jewelry Department;

ii)  annual performance evaluations of April 2013 and March 2014 in which she was rated as "meet expectations," Walmart noted positive areas of performance and others that warranted improvement, and entailed hourly wage increases for both years;

iii)  admonishment of December 2013 regarding vacation leave during the Christmas-holiday shopping season in violation  of company policy and practice, and that was nonetheless granted with an indication that she was not to request vacation leave during future high-sales-volume dates;

iv)  removal of scheduling duty for having programmed the Jewelry Department staff's work schedule to accommodate her Christmastime vacation prior to requesting and obtaining leave to take said vacation;

v)  first-level warning of December 2013 for Ríos allowing one of her supervised employees to leave work early in spite of the Store Manager having denied the related request;

vi)  second-level warning for failing to show up at work, or calling to notify her absence on June 29, 2014;

vii)  verbal admonishment of July 2014 for failing to obtain authorization from a supervisor

when processing a refund;

viii)  third-level warning on December 2014, one-day suspension with pay, and performance

improvement plan for failing to process the vendor credits corresponding to Black Friday in

spite of previous admonishments regarding tardy vendor credits; and

ix)  annual performance evaluation of April 2015 in which Ríos's performance was rated

"below expectations," highlighted both positive areas of performance and others that

warranted improvement, and as a result of which, her hourly wage remained the same.

The Court hereby holds that the employment actions in question do not meet the high

legal standard summarized above to constitute adverse employment actions that could support

an actionable claim of retaliation. See *Marrero*, 304 F.3d at 23, *Morales-Vallellanes*, 605 F.3d at 35-

36, *Cham*, 685 F.3d at 94-95; *Colón-Fontánez*, 660 F.3d at 43. Those actions, both individually and

taken as a whole, did not adversely affect the terms or conditions of Ríos's employment in any

way. On the contrary, it is uncontested that throughout the period during which the actions took

place, from December 2012 to April 2015, Ríos remained in the same position as Jewelry

Department Manager, with essentially the same functions, and received two wage increases

resulting from the annual evaluations of 2013 and 2104 in which her performance was rated to

meet expectations. In addition, even though her performance was rated as below expectations

in her annual evaluation of 2015, her hourly wage and her position remained the same.

Furthermore, the case's record supports Walmart's contentions that both the performance

evaluations and the progressive-discipline actions to which Ríos was subject were executed pursuant to company policies known by her, and resulted from well documented deficiencies in her job performance and other violations.

In sum, plaintiffs fail the second prong of the prima facie case of retaliation regarding the pre-dismissal employment actions against Ríos that plaintiffs claim to constitute retaliation, since none of them were adverse employment actions under applicable legal standards. Thus, Walmart's summary judgment motion regarding plaintiffs' retaliation claim pertaining to the alleged employment actions prior to her dismissal is hereby **GRANTED**.

### 3. Plaintiffs are unable to establish an actionable claim of retaliatory hostile work environment

Plaintiffs allege that Ríos was subject to a hostile work environment in retaliation for García (her husband) having filed various administrative and judicial claims against Walmart. They contend that the hostile work environment consisted of frequent comments by company managers allusive of the claims filed by García and Ríos and the adverse employment consequences that would ensue against Ríos as a result of those claims. We incorporate by reference the specific comments quoted above as testified by Ríos in her deposition under oath.

In its summary judgment motion, Walmart contends that plaintiffs' claim of retaliatory hostile work environment should be dismissed, inasmuch as they failed to exhaust administrative remedies regarding the same. Specifically, Walmart asserts that in her EEOC charge of May 7, 2015, Ríos alleged that she was subject to retaliation from November 2012 to

May 2015, mentioned having negative evaluations and disciplinary actions in 2014 and 2015 in particular, and requested the EEOC to verify if such actions were related to her husband's legal claims against Walmart. Thus, Walmart contends that by failing to include in the EEOC charge any mention of the alleged comments that constitute the retaliatory hostile work environment claim, Ríos did not exhaust administrative remedies regarding that cause of action, for which it should be dismissed. Walmart also avers that plainitffs' hostile work environment claim should be dismissed under the doctrine of laches.

However, as stated above, plaintiffs included in support of their opposition to the summary judgment motion a copy of Ríos's amended charge before the EEOC of September 9, 2015. In the amended charge, she included additional allegations of retaliation by Walmart that comprised the hostile working environment claim, including the allegedly derogatory comments in question, among other alleged actions. Walmart contends that the amended charge was not produced either by plaintiff in response to Walmart's written discovery requests, or by the EEOC in their response to Walmart's F.O.I.A. request. Plaintiffs aver that they did produce the amended charge in question in their responses to Walmart's discovery requests.

For the purpose of adjudicating the summary judgment motion at hand, the Court hereby takes judicial notice of the amended EEOC charge in question, which bears the agency's filing stamp indicating date and time of filing, inasmuch as it constitutes a public record. Fed. R. Evid. 201; *Cintrón-García v. Supermercados Econo, Inc.,* 818 F. Supp.2d 500, 506 (D.P.R. 2011) (EEOC charge may be considered as a public record subject to judicial notice); *Maldonado–Cordero v. AT*

& T, 73 F. Supp.2d 177, 185 (D.P.R. 1999) (citing *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986)); *see also Intri–Plex Technologies, Inc. v. The Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007); *Adetuyi v. City and County of San Francisco*, 63 F. Supp.3d 1073, 1080 (N.D. Cal. 2014) (courts have routinely taken judicial notice of documents in EEOC records).

In their opposition to the summary judgment motion, plaintiffs aver to have exhausted administrative remedies regarding the hostile work environment claim comprising all the alleged retaliatory comments that created a hostile work environment pursuant to the continuing violation doctrine. Under that doctrine, when a plaintiff experiences multiple discriminatory or retaliatory acts arising from the same discriminatory or retaliatory animus, alleged acts that fall outside of the 300-day term pursuant to 42 U.S.C § 2000e-5(e)(1) for the timely filing of an EEOC charge are anchored by related acts that fall within the aforementioned term. *Ayala v. Shinseki*, 780 F.3d 52, 57 (1st Cir. 2015); *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 405 (1st Cir. 2002). In the instant case, although Ríos does not recall the exact dates of the alleged comments that constituted the retaliatory hostile work environment against her, she alleges that the comments occurred approximately on a bi-weekly basis, starting in 2013 and continuing up until her dismissal on May 19, 2015. She alleges too that all the comments were related to the claims filed by García and her and the adverse consequences that she would suffer in her job for having filed those claims. Thus, her retaliatory hostile work environment claim constitutes an alleged continuing violation regarding which she exhausted administrative remedies by filing

the amended EEOC charge of May 7, 2015, and her subsequent amendment to the same charge of September 9, 2015.[5]

Notwithstanding the above, Plaintiffs are unable to establish an actionable claim of retaliatory hostile working environment under applicable legal standards. As in discrimination claims, a hostile work environment is a cognizable form of adverse employment action in retaliation claims. *Noviello v. City of Boston*, 398 F.3d 76, 88-95 (1st Cir. 2005). "In importing the hostile work environment doctrine into the anti-retaliation context, courts are left to draw the standards . . . from the case law involving hostile work environments in the anti-discrimination context." *Id*. at 94. Accordingly, to establish an actionable claim of hostile work environment, a plaintiff "must show that his workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter de conditions of . . . [his] employment and create an abusive working environment.'" *Quiles-Quiles v. Henderson*, 439 F.3d 1, 7 (1st Cir. 2006) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)); see also *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998). "The Court must consider all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Marriot Resort & Stellaris Casino*, 600 F. Supp.2d at 311.

---

[5]  The Court notes that both the May 2015 charge and the September 2015 amendment have the same EEOC case number, 515-2015-00326.

The Court hereby holds that even accepting as true the alleged comments by company managers to Ríos, plaintiffs did not meet their legal burden to produce evidence of comments that were sufficiently severe or pervasive to rise to the level of a hostile working environment under the stringent First Circuit standards. In fact, the District of Puerto Rico has summarily dismissed and the First Circuit has affirmed dismissals of claims of hostile work environment under various anti-discrimination laws in factual scenarios either equivalent or more severe than the one alleged in the instant case. *See, e.g., Marrero v. Schindler Elevator Corp.*, 494 F. Supp.2d 102, 110 (D.P.R. 2007) (even accepting as true allegations of daily comments by employee's immediate supervisor including "viejo," "viejito," "viejo pendejo," plaintiff was not subject to adverse employment action in form of hostile work environment, since the alleged conduct was not severe and pervasive enough to meet the applicable legal standard); *Rodriguez-Fonseca v. Baxter Healthcare Corp. of Puerto Rico*, 899 F. Supp.2d 141 (D.P.R. 2012) (supervisor calling employee an "old man" or "crazy old man" repeatedly did not create hostile work environment in violation of the ADEA); *Villegas-Reyes v. Universidad Interamericana de P.R.*, 476 F. Supp.2d 84, 91 (D.P.R. 2007) (daily comments toward plaintiff of "vieja," "anciana," and "abuela," and that she should retire, did not meet the severe and pervasive standard to constitute hostile work environment claim); *Fernández-Ocasio v. Walmart Puerto Rico, Inc.*, 94 F. Supp.3d 160, 178 (D.P.R. 2015) (remarks that the plaintiff was good for nothing because she said she was in pain and should apply for social security were insufficient to sustain a hostile work environment under First Circuit standards); *Fontánez–Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 57 (1st Cir. 2006) (First

Circuit rejected hostile work environment claim of plaintiff based on comments by supervisor complained to have suffered a hostile work environment based on reiterated derogatory comments such as "gray haired," slow and incompetent; and "cockatoo" based on his gray hair); *Kosereis v. Rhode Island,* 331 F.3d 207, 216 (1st Cir. 2003) (comments against a Turkish-born Muslim who worked as a vocational teacher that he was a turkey and mocking Turkish food did not amount to a hostile work environment).[6]

In sum, Walmart's summary-judgment motion is hereby **GRANTED** in relation to plaintiffs' claim of retaliatory hostile work environment.

### 4. Genuine issues of material facts preclude granting summary judgment regarding plaintiffs' claim of retaliatory discharge

In essence, Walmart contends that Ríos was dismissed upon the conclusion of a company investigation, which established that Ríos had engaged in understocking by keeping merchandise unavailable to Walmart customers so that she could later place the merchandise on a lay-away for herself, in serious violation of company policies known by her. Walmart further asserts that her dismissal was executed in accordance with its progressive-discipline policy and procedure known by Ríos. Specifically, pursuant to said procedure, Ríos had already received

---

[6] *See also Reyes Vega v. Pepsi Cola Puerto Rico Distrib. LLC,* 371 F. Supp.2d 21, 27-28 (D.P.R. 2005); *Navedo v. Nalco Chem., Inc.,* 848 F. Supp.2d 171, 199 (D.P.R. 2012); *Brauchitsch-Monedero v. Puerto Rico Elec. Power Auth.,* 786 F. Supp.2d 470, 486–87 (D.P.R. 2011); *Gutiérrez-Lines v. Puerto Rico Elec. and Power Auth.,* 751 F. Supp. 2d 327, 342–43 (D.P.R. 2010); *Rodríguez-Torres v. Govt. Dev. Bank of Puerto Rico,* 704 F. Supp.2d 81, 102 (D.P.R. 2010); *Laboy v. Dick Corp. of P.R., Inc.,* 2006 WL 3098756, at *4 (D.P.R. 2006) (not published in Federal Supplement); *Cordero-Suárez v. Rodríguez,* 2011 WL 2974755 at *9-11 (D.P.R. 2011) (not published in Federal Supplement).

first-level, second-level, and third-level warnings and a one-day suspension with pay for prior

violations, and had been advised that any further violation could lead to her dismissal

Plaintiffs reject the reasons for Ríos's dismissal given by Walmart, and contend that

defendant "discharged her from her position due to her complaints and the discrimination

charge filed against the defendant." **ECF No. 1 at 6.** Specifically, Ríos testified in her deposition

under oath that Pagán, her supervisor at the time, and Gracia, the Store Manager at the time,

were the company officials who met with her to inform her of her dismissal on May 19, 2015.

According to Ríos, Pagán told her at the meeting: "See? I told you. This complaint of yours was

the straw that broke the camel's back. These are the consequences of what you do. So gather

your things. You're terminated." **ECF No. 54-3 at 22-23.** Ríos further testified that Gracia told

her at the meeting: "Don't worry. With the complaint, you're going to be fine." *Id.* at 23.

Ríos also alleges that from 2013 onward, she had been subject to frequent retaliatory

comments by Gracia and Pagán. As discussed above, the Court holds that those alleged

comments prior to her dismissal did not constitute a hostile work environment under applicable

legal standards. However, plaintiffs proffer those alleged pre-dismissal comments as evidence

not only of retaliatory hostile work environment, but also of retaliatory animus by her superiors

that underlied her eventual dismissal. Thus, if proved true, the alleged comments may constitute

direct evidence of retaliatory animus against Ríos by company managers. Furthermore, insofar

as it is uncontested that Gracia was a decisionmaker in Ríos's dismissal, his alleged comments

would be relevant in determining whether plaintiffs met the third prong of a prima facie case of

retaliatiory discharge—establishing the requisite causal nexus between plaintiffs' protected activities and Ríos's dismissal.[7]

Furthermore, it is uncontested that at the time of Ríos's dismissal, Walmart was aware of her earlier administrative and judicial claims with García against Walmart that transpired from 2011 until 2014. However, there is an issue of material fact as to whether at the time of Ríos's dismissal on May 19, 2015, Walmart knew of Ríos's EEOC charge that she had filed on May 7, 2015. While Walmart alleges that the company learned of Ríos's EEOC charge after her dismissal, plaintiffs assert that the alleged comments by company managers allusive of her complaint referred to the EEOC charge that she filed days before her dismissal. That, too, would be relevant to determine whether plaintiffs met the third prong of their retaliatory discharge claim, inasmuch as the protected activity in question—Ríos's EEOC charge of May 7, 2015—was the protected activity that occurred in very close temporal proximity to Ríos's dismissal. *See Breeden*, 532 U.S. at 273; *Sánchez-Rodríguez*, 673 F.3d at 15; *Medina-Rivera*, 713 F.3d at 139.

It is well settled that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (internal citations and quotations omitted). In other words, "[t]he role

---

[7] The case's record is not clear as to whether Pagán was a decisionmaker in Ríos's dismissal, even though she was Ríos's supervisor at that time and participated in Ríos's exit interview.

of the trial judge at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Hodgens. v. Gen. Dynamics Corp.*, 144 F.3d 151, 168 (1st Cir. 1998). Accordingly, trial courts should act with caution in granting summary judgment, and should deny summary judgment in a case where it deems that the better course would be to proceed to a full trial. *Anderson*, 477 U.S. at 255.

In light of the above, the Court hereby **DENIES** Walmart's summary judgment motion regarding plaintiffs' claim of retaliatory discharge as to Ríos's dismissal.

### 5.  Claims under Puerto Rico laws

Plaintiffs' Puerto Rico and federal claims derive from the same nucleus of operative facts. *See* 28 U.S.C. §1367(a); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). **ECF No. 1**. As such, the Court hereby exercises supplemental jurisdiction over the remaining Puerto Rico law claims at summary judgment. *Id*. We hereby incorporate by reference the list of Puerto Rico statutes (and their corresponding citations) included above under which plaintiffs filed the instant case.

### a)  Law 44 and Law 100

In their memorandum of law in support of their opposition to defendant's motion for summary judgment, plaintiffs request the voluntary dismissal of their causes of action of retaliation under Laws 44 and 100. **ECF No. 56** at 1. Furthermore, Law 44 are Puerto Rico's counterparts to ADA and Title VII, respectively. *See Arce v. Aramark Corp.*, 239 F. Supp.2d 153

(D.P.R. 2003); *Salgado-Candelario v. Ericsson Caribbean*, Inc., 614 F. Supp.2d 151 (D.P.R. 2008). Thus, inasmuch as the Court grants herein defendant's summary judgment motion regarding plaintiffs' claims of discrimination under ADA and Title VII, the Court hereby **GRANTS** the summary judgment motion as to plaintiffs' claims under Laws 44 and 100.

### b) Law 115

Plaintiffs assert a retaliation claim under Puerto Rico Law 115, which makes it unlawful for an employer to discharge or discriminate against employees because "they offer or attempt to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico." P.R. Laws Ann. tit. 29 § 194(a); *see Salgado-Candelario*, 614 F. Supp.2d at 177. On September 29, 2014, Law 115 was amended and expanded by Law 169 to protect employees from relation for offering testimony, providing or attempting to provide information, or otherwise participating in an internal investigation in the workplace, or offering this information to any company employee or representative in a position of authority. *Id*.

In this case, the Court denies summary judgment regarding plaintiffs' retaliation claim as to Ríos's dismissal. Therefore, defendants' motion for summary judgment regarding plaintiffs' claim under Law 115 is hereby **DENIED**.

### c) Law 80

Law 80 is Puerto Rico's unjust dismissal statute. *Otero-Burgos v. Inter American University*, 558 F.3d 1, 7-9 (1st Cir. 2009). It defines just cause for dismissal, and provides a severance-payment remedy for those employees who can establish that they were wrongfully dismissed pursuant to that statute. In the instant case, the Court denies defendant's summary judgment motion regarding plaintiffs' claim of retaliation as to Ríos's dismissal. Therefore, defendant's motion for summary judgment is hereby **DENIED** as well regarding plaintiff's claim of unjust dismissal under Law 80.

### d) Law 45

Law 45 establishes a scheme of worker's compensation under which employees who suffer occupational injuries are provided treatment and other benefits. *See Marrero-Ramos v. University of Puerto Rico,* 46 F. Supp.3d 127, 131 (D.P.R. 2014). Law 45 is listed among the laws under which plaintiffs bring the instant court action. However, the instant case is devoid of any factual allegations of violation of plaintiffs' rights under the statute in question. Accordingly, the Court hereby **GRANTS** defendant's summary judgment motion in relation to plaintiffs' claim under Law No. 45.

### e) Tort claim under Puerto Rico's Article 1802 of the Civil Code

Article 1082 is Puerto Rico's general tort statute. *See Marrero-Ramos*, 46 F. Supp.3d at 131. It provides that a "person who by an act or omission causes damage to another through fault or

negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31 § 5141. In the instant case, the Court denies summary judgment regarding plaintiffs' claim of retaliation as to Ríos's dismissal, which may entail an award of tort damages if plaintiffs were to prevail at trial in their retaliatory discharge claim and were to prove concomitant damages. Thus, defendant's summary judgment motion as to plaintiffs' tort claim related to Ríos's alleged retaliatory discharge is hereby **DENIED**.

## V.    Conclusion

Based upon the foregoing, defendants' motion for summary judgment, **ECF No. 39**, is hereby **GRANTED IN PART AND DENIED IN PART**. In summary, the Court rules as follows:

1. The Court **GRANTS** defendants' motion for summary judgment as to plaintiffs' claim of employment discrimination under ADA and Title VII.

2. The Court **GRANTS** defendants' motion for summary judgment as to plaintiffs' claims of employment discrimination and retaliation under Law 44 and Law 100**.**

3. The Court **GRANTS** defendants' motion for summary judgment as to plaintiffs' claim under Law 45.

4. The Court **GRANTS** defendants' motion for summary judgment as to plaintiffs' claim of retaliatory hostile work environment under ADA and Title VII;

5.  The Court **DENIES** defendants' motion for summary judgment as to plaintiffs' claim of retaliatory discharge regarding Ríos's dismissal under Title VII, ADA, Law 80, and Law 115.

6.  The Court **DENIES** defendants' motion for summary judgment as to plaintiffs' claim of tort damages related to Ríos's alleged retaliatory discharge under Title VII, ADA, Law 115, and Article 1802 of the Puerto Rico Civil Code.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of September, 2017.

**S/AIDA M. DELGADO-COLÓN**
**Chief United States District Judge**