# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JENNIFER M. RIOS-VALENTIN**, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> **WALMART PUERTO RICO, INC.**, <br><br> Defendant. | **Civil No. 16-1694 (ADC)** |

## OPINION AND ORDER

Plaintiffs Jennifer Ríos-Valentín ("Ríos-Valentín"), her husband Javier García-Santiago ("García-Santiago"), and the Conjugal Partnership composed by them (collectively referred to as "plaintiffs"), filed a complaint against defendant Walmart Puerto Rico, Inc. ("defendant") alleging unlawful discrimination and retaliation in violation of numerous federal and Commonwealth of Puerto Rico laws. **ECF No. 1** at 1. On September 30, 2017, the Court granted, in part, defendant's motion for summary judgment dismissing most of the case's causes of action. **ECF No. 75**.[1]

Before the Court is defendant's motion *in limine* to preclude plaintiffs from "presenting, commenting, or making any reference to any evidence at trial regarding economic damages."

---

[1] The remaining claims are: Ríos-Valentín's claim of retaliatory discharge under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), Americans with Disabilities Act 42 U.S.C. § 12117 *et seq.* ("ADA"), Act No. 80 of May 30, 1976, as amended, 29 P.R. Laws Ann., tit. 29, § 185a *et seq.* ("Law 80"), and Act No. 115 of December 21, 1991, P.R. Laws Ann., tit. 29, § 194 *et seq.* ("Law 115"); and plaintiffs' tort claim related to Ríos-Valentín's alleged retaliatory discharge under Title VII, ADA, Act 155, and Article 1802 of the Commonwealth of P.R. Civil Code, P.R. Laws Ann., tit. 31, § 5141 ("Article 1802"). **ECF No. 75** at 39-40

**ECF No. 81** at 15. For the reasons discussed below, defendant's motion *in limine,* at **ECF No. 81**, is **GRANTED IN PART and DENIED IN PART**.

I.   **PROCEDURAL BACKGROUND**

   **A. Defendant's motion *in limine***

Almost a year after the Court summarily dismissed most of the complaint's causes of action, defendant filed a motion *in limine*. **ECF No. 81**. Defendant argues that plaintiffs have failed to provide the required calculations in connection with plaintiffs' claim for economic damages regarding the "loss of income, back-pay, front-pay, and loss of benefits in an amount no less than $100,000.00." *Id.* at 2. By failing to do so, defendant purports that plaintiffs neglected their obligations under Federal Rule of Civil Procedure Rule 26(a)(1)(A)(iii) and, thus, forfeited their right to present evidence of their economic damages at trial pursuant to Fed. R. Civ. P. 37(c)(1) and Federal Rules of Evidence 602 and 403. *Id* at 5. Most, if not all, of defendant's arguments focus on plaintiffs' requests for back and front pay.

   **B. Plaintiffs' response in opposition to defendant's motion *in limine***

On September 26, 2018, plaintiffs filed an opposition to defendant's motion *in limine*. **ECF No. 83**. Plaintiffs argue that defendant, as the former employer of both plaintiffs, had knowledge of all the information necessary to calculate plaintiffs' economic damages. *Id*. Plaintiffs also argue that they met all their obligations related to the initial disclosures by tendering their answers to the written discovery and answering all of defendant's questions during the depositions. *Id*.

Plaintiffs allegedly informed defendant that Ríos-Valentín had "never requested social security benefits," and that García-Santiago collected social security benefits in the amount of $835.00 per month. **ECF No. 83** at 1-2. Plaintiffs further allege to have timely tendered copies of plaintiffs' W2 and income tax return forms for fiscal years 2011-2016. **ECF No. 83** at 2.

To support the argument that defendant had all relevant information, plaintiffs argue that they testified during deposition that other than "[García-Santiago]'s social security benefits, food stamps[,] and the unemployment compensation checks received by [Ríos-Valentín], from June 2015 until December 2015," there is "nothing else." **ECF No. 83** at 3. Plaintiffs also assert having testified about undergoing a foreclosure proceeding for default on their mortgage payment and that they were behind in their utilities bills as well as other monthly payments. *Id*.

Plaintiffs added that:

[a]s for [plaintiff Ríos-Valentín]'s back and front pay calculation, the defendant knew, since plaintiff[s'] answers to the interrogatories, that the same were calculated based on [Ríos-Valentín's] earnings with the defendant at the time of her termination, as the same appear in the [two] 2 forms prepared by [defendant], the amount of $28,977.73, and the fact that notwithstanding her mitigation efforts, as of today, has not been able to find a job, [Ríos-Valentín's] backpay, as of today, amounts to approximately $99,001.00, and in the Complaint[], the [plaintiffs] alleged that their economic damages, including backpay and front pay, were approximately $100,000.00. **ECF No. 83** at 3.

In addition, plaintiffs assert that all the necessary information regarding the economic damages was conveyed to defendant in an email sent by plaintiffs' counsel on January 12, 2017. **ECF No. 83** at 4. Finally, plaintiffs argue that in *Eugenio Santiago v. Walmart*, Civil Case No., 14-

1425 (ADC), the Court held that disclosures identical to the ones here in controversy complied with Fed. R. Civ. P. 26(e)(1)(A). [2] *Id*.

### C. Defendant's reply

On October 15, 2018, defendant filed a reply. It holds that plaintiffs' opposition was short of an admission to the fact that plaintiffs failed to comply with Fed. R. Civ. P. 26(e). **ECF No. 88** at 3. Defendant added that, "regardless of plaintiffs' perception regarding the level of difficulty implicated by said calculations, the Federal Rules of Civil Procedure require them to provide the computation of their damages." *Id*. Specifically, "[p]laintiffs have not provided any evidence regarding [plaintiff Ríos-Valentín's] claim for front-pay." *Id*. In connection with the January 12, 2017 email, defendant counters that "nowhere in the[]… letter sent by plaintiffs' counsel is there an explanation as to the formula and computation of plaintiff[s'] back pay and front pay." *Id*.

Defendant claims to be stuck in a position where it has no real possibility of assessing the exposure it faces. Particularly, defendant shows concern with regards to the "potential liability exposure of front pay." *Id* at 5. Defendant also claims not being able to defend itself on trial. Defendant further posits that plaintiffs' opposition was silent as to defendant's arguments of exclusion under Rules 403 and 602 of the Federal Rules of Evidence. Therefore, defendant contends that the Court should rule that plaintiffs waived any opposing arguments. *Id* at n. 1. Alternatively, defendant argues that "plaintiffs have not amended their disclosures" in light of

---

[2] Plaintiffs' argument is mistaken and contradicted by the record. In case 14-1425 (ADC) multiple sanctions, up to exclusion of evidence and witnesses, were imposed given plaintiffs' lack of adherence to discovery rules and obligations.

**ECF No. 75**. *Id*. Plaintiffs' failure allegedly "deprives [defendants] of the opportunity to pursue contrary evidence, or generally prepare its defenses." *Id* at 9. Finally, defendant argues that the ruling of the Court in *Eugenio Santiago v. Walmart*, 14-1425 (ADC) is all but favorable to plaintiffs, as it held that plaintiffs needed to amend their initial disclosure after the dismissal of various causes of action. *Id* at 7.

### D. Plaintiffs' sur-reply

On November 5, 2018, plaintiffs filed a sur-reply stating that they "provided to the defendant the documents which support her back pay request, specifically, her income tax returns, her W2[]… the evidence and documents related to her unemployment benefits, and the evidence related to her mitigation efforts." **ECF No.** 92 at 1. Moreover, plaintiffs assert that they also provided "an explanation for the computation of [Ríos-Valentín's] back pay, and the amount of the same." *Id*. Plaintiffs added that defendant has all the information regarding plaintiffs' employment history, "permanency of the position occupied," nature of the work, age and physical condition, possible consolidation, current work market, and economic climate. *Id* at 2. Finally, plaintiffs argue that defendant failed to accurately assert the prejudice suffered "as a result of plaintiffs' alleged failure to describe back pay calculations." *Id*.

With regards to the front pay, plaintiffs merely concluded that defendant always had possession of all the information "needed related to make any front pay calculation." *Id*. Finally, plaintiffs conclude that defendant's proposed interpretation of the orders entered in *Eugenio Santiago v. Walmart*, 14-1425 (ADC) is incorrect.

## II. LEGAL STANDARD

Fed. R. Civ. P. 26(a)(1)(A)(iii), provides that the parties must disclose

> a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Notably, this disclosure "directs any party claiming damages or other monetary relief to provide a computation of those damages or other relief and make available all unprivileged documents on which such computation is based." 8A Wright & Miller, *Federal Practice and Procedure* § 2053 (3d ed.).

Under Fed. R. Civ. P. 26(e)(1)(A),

> "[a] party who has made a disclosure under Rule 26(a)-- or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response. . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

Furthermore, under Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Accordingly, "district courts have broad discretion in meting out . . . sanctions for Rule 26 violations . . . [and the] [e]xclusion of evidence is a standard sanction for a violation of the duty of disclosure under Rule 26(a)." *Peña-Crespo v. Puerto Rico*,

408 F.3d 10, 13 (1st Cir. 2005) (quoting *Laplace-Bayard v. Batlle*, 295 F.3d 157, 162 (1st Cir. 2002) (internal quotation and citation omitted) (witness testimony excluded as sanction for a party's failure to timely disclose witnesses as required by the aforementioned rules)); *see also Santiago-Díaz v. Laboratorio Clínico y de Referencia del Este and Sara López*, M.D., 456 F.3d 272, 275 (1st Cir. 2006).

### III. DISCUSSION

The controversy before the Court is whether it should "preclude Ríos[-Valentín] from introducing evidence regarding her request for economic damages" for failure to disclose information regarding the "computation" of the alleged economic damages, particularly evidence related to back and front pay. *See* **ECF Nos. 81** at 5, 10, 11, 12, 13, 14; **88** at 2, 4, 5.

Pursuant to Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Accordingly, plaintiffs bear the burden of showing that they did, in fact, provide the information under Fed. R. Civ. P. 26(a). If they did not, they must convince the Court that said failure is substantially justified or that it is harmless to defendant. *See Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001).

As discussed above, in the opposition to defendant's motion *in limine*, plaintiffs aver that defendants "knew" that Ríos-Valentín's back and front pay was "calculated based on [her] earnings with the defendant at the time of her termination[]… the amount of $28,977.73, and the

fact that notwithstanding her mitigation efforts… [she] has not been able to find a job, [her] back pay, as of today, amounts to approximately $99,001.00." **ECF No. 83** at 3. Notably, plaintiffs did not aver to have disclosed the calculation to defendant. Neither did plaintiffs cite or refer to any document, deposition transcript, motion, pleading or communication containing any calculation related to the economic damages.

Plaintiffs repeatedly asserted that they met their obligation to provide adequate initial disclosures and that they provided all the relevant information regarding the economic damages throughout their answers to the written discovery. However, in their answers to the relevant interrogatories, plaintiffs stated the following

> [t]he amount of damages as itemized and described in the Complaint, were calculated by plaintiff's attorney, based on her files with her different treating physicians (for which the plaintiff provided to the defendant authorizations in order for the defendant to obtain a copy of the same), and the different factual allegations in the Complaint. Plaintiff's economic damages were calculated by plaintiff's attorney based on her earnings with the defendant. Any and all documents used for the damages calculations were provided to the defendant. **ECF No. 81-4** at 3.

Additionally, in their answers to the written discovery, plaintiffs informed that Ríos-Valentín's post termination sources of income were the unemployment benefits she received in the amount of "$266.00 biweekly" from June 2015 to December 2015 and the social security benefits collected by plaintiff García-Santiago since 2013. **ECF No. 81-2**.

Plaintiffs also contend that the January 12, 2017 email explained "the computation and formula used for plaintiff's back pay and front pay benefits." **ECF No. 83** at 4. However,

counsel's email only stated that the damages "were explained, in detail, during their respective depositions," and concluded that "plaintiff's economic damages computation is a simple exercise, since plaintiff[s'] only income source came from [defendant], and after their respective termination, they had not been able to work, nor earn any income, even as of today." **ECF No. 83-2** at 1.

Furthermore, plaintiffs argue that defendant had the opportunity to ask as many questions as it pleased in connection with the claim for economic damages at plaintiffs' depositions. **ECF No. 83** at 2. Nonetheless, the excerpts of deposition submitted by plaintiffs do not include any testimony related to calculations of economic damages *per se*. When questioned about the economic damages, Ríos-Valentín testified that

> I owe money for my water bill, for my power bill. I've had my power shut off, I've had it reinstated. I'm behind on my mortgage. If I want to pay the house, then I have to stop paying my water bill. I mean, it's really difficult. If my car breaks down I don't have enough to repair it with. This is from what I can recall. And then the Reforma doesn't–- I mean, I can't go see the physicians I used to have and if I want to go see them then I have to pay or I have to borrow money because they don't accept Reforma patients. **ECF No. 83-6** at 2.

Finally, plaintiffs added that defendant had possession of all information necessary for the Court to grant the reliefs and remedies sought in the complaint. Particularly, plaintiffs asserted that defendant had possession and control over the following information

> length of plaintiff's employment with the defendant, the permanency of the position occupied by the plaintiff with Walmart, the nature of plaintiff's work at Walmart, plaintiff's age and physical condition, possible consolidation of jobs at Walmart, and other factors with the defendant, that

could affect plaintiff's reinstatement, the current job market and economic
climate for Walmart business. **ECF No. 92** at 2.

**A. Front pay**

Front pay has been generally described as an award to "compensates the plaintiff for the loss of future earnings." *Ramos v. Davis & Geck, Inc.*, 167 F.3d 727, 733 (1st Cir. 1999). Unlike back pay, front pay factors in future events in its calculation. "Since future damages are often speculative, however, we have held that 'the district court, in exercising its discretion, should consider the circumstances of the case, including the availability of liquidated damages.'" *Powers v. Grinnell Corp.*, 915 F.2d 34, 43 (1st Cir. 1990) (citing *Wildman v. Lerner Stores Corp.*, 771 F.2d 605, 616 (1st Cir. 1985)). Moreover, "[a]n award of front pay, constituting as it does, an estimate of what a plaintiff might have earned had she/he been reinstated at the conclusion of trial, is necessarily speculative." *Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 355 (1st Cir. 1998). Thus, "the decision to award or withhold front pay is, at the outset, within the equitable discretion of the trial court." *Lussier v. Runyon*, 50 F.3d 1103, 1108 (1st Cir. 1995).

Factoring in future events, the Court could consider evidence regarding the length of plaintiff's prior employment, the permanency of the position held, the nature of work, plaintiff's age and physical condition, possible consolidation of jobs and non-discriminatory factors that could validly affect the post-discharge employment relationship. *See Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991). Among other factors, movant ought to show mitigation efforts, "the availability of employment opportunities, the period within which one

by reasonable efforts may be re-employed, the employee's work and life expectancy, the discount tables to determine the present value of future damages" and others. *Shore v. Federal Exp. Corp.*, 777 F.2d 1155, 1160 (6th Cir. 1985).

Plaintiffs failed to disclose information and to provide documents relevant to the calculation of the front pay. Even though the term "front pay" is scattered around plaintiffs' motions at **ECF Nos. 83, 92,** plaintiffs did not make any particular showing to the effect that they met their obligations under Fed. R. Civ. P. 26(a). Moreover, plaintiffs were not able to identify a single instance in which they disclosed information regarding the calculation relevant to their request for front pay. To wit, plaintiffs failed to disclose information regarding the availability of employment opportunities, the period within which one by reasonable efforts may be re-employed, the employee's work and life expectancy, the discount tables to determine the present value of future damages, etc. Plaintiffs, through counsel, neglected their obligations under Fed. R. Civ. P. 26(a) by relying on the assumption that defendant had information regarding plaintiffs' length employment, "permanency of the position occupied," the nature of their work, age, physical condition, potential "consolidation of jobs," current job market, and economic climate. **ECF No. 92** at 2. However, plaintiffs did not disclose any information regarding their front pay "calculation," formula or factors to take into account in order for the Court to be able to calculate front pay.

The Court now turns to the question of whether plaintiffs' failure to disclose information relevant to front pay was substantially justified or if it is harmless. Plaintiffs contend that

as for the alleged prejudice suffered related to the front pay exposure, the **defendant [has] also failed to describe the prejudice suffered**, and as for the information needed related to make any front pay calculation, and for the Honorable Court to make any reinstatement decision, it is in the possession and control of the defendant, as well as in the Complaint. **ECF No. 92** at 2 (emphasis added).

The burden of providing a justification or showing that the failure to disclose was a harmless omission falls upon the plaintiffs, not the defendant. *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001)("it is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with the Rule was either justified or harmless.") Plaintiffs could not simply shift the burden to defendant by asserting that defendant "failed to describe the prejudice." **ECF No. 92** at 2. Here, plaintiffs did not offer any justification, nor did they offer any reasons why it was harmless. Considering that front pay calculations "necessarily involve predictions of events yet to come," plaintiffs should have disclosed the factors that led them to claim no less than $100,000.00 in economic damages, including front pay. *Johnson v. Spencer Press of Maine, Inc.*, 364 F.3d 368, 380 (1st Cir. 2004).

Defendant argues to be left "without an opportunity to explore the basis for the calculations or to accurately gauge the monetary exposure it faced in this action and, as a result, the amount it needed to expend to defend against the accusations." **ECF No. 88** at 5 (citing *AVX Corp. v. Cabot Corp.*, 252 F.R.D. 70, 78 (D. Mass. 2008)). Pursuant to Fed. R. Civ. P. 26 and 37, the Court hereby grants defendant's motion *in limine* as it relates to the front pay.

**B. Back pay, loss of benefits and income**

Generally, back pay, loss of benefits and income seek to make movant whole. These type of damages "are meant to put the plaintiff in the economic position he would have been in but for[]"employer's actions. *Watlington v. U. of Puerto Rico*, 751 F. Supp. 318, 330 (D.P.R. 1990). Back pay damages consider "wages, fringe, and other job-related benefits." *Kolb v. Goldring, Inc.*, 694 F.2d 869, 872 (1st Cir. 1982). However, "[f]rom these must be subtracted post-termination economic benefits." *Id*. That is, "[a] prevailing ADA claimant is presumptively entitled to all back pay which would have accrued from the termination date to the entry of judgment… provided it is made to appear that reasonable diligence was exercised in the effort to secure other suitable employment." *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 15–16 (1st Cir. 1999) (citation and internal quotation marks omitted).

Defendant avers that plaintiffs did not disclose a "calculation" of those elements as part of the economic damages as required by the rules. However, the record shows that plaintiffs disclosed information and documents which constitute the elements of plaintiffs' calculations. First, plaintiffs informed that Ríos-Valentín's source of income (post termination by defendant) were the unemployment benefits she received in the amount of "$266.00 biweekly" from June 2015 to December 2015 and the social security benefits collected by García-Santiago since 2013. **ECF No. 81-2**. As former employer of both plaintiffs, defendant had possession and control over information regarding length of plaintiffs' employment with the defendant, the permanency of the position occupied by the plaintiff with Walmart, the nature of plaintiffs' work at Walmart,

plaintiff's age and physical condition, possible consolidation of jobs at Walmart, etc. **ECF No. 92** at 2. Secondly, plaintiffs informed defendant that Ríos-Valentín did not request social security benefits, and that García-Santiago collected social security benefits in the amount of $835.00 per month. **ECF No. 83** at 1-2. Plaintiffs further tendered plaintiffs' income tax return forms filed for fiscal years 2011- 2016. **ECF No. 83** at 2. Finally, it came to light during the depositions that "[García-Santiago]'s social security benefits, food stamps[,] and the unemployment compensation checks received by [Ríos-Valentín], from June 2015 until December 2015," was the only source of income available for plaintiffs. **ECF No. 83** at 3.

Even if this information could not be considered as a detailed calculation or formula of back pay, loss of income and benefits, it certainly cannot be considered to have placed defendants in a defenseless position or otherwise harm defendant. Defendant was the employer of both plaintiffs. Accordingly, it knows plaintiffs' loss of income and benefits in connection with their termination at Walmart better than anyone. The documents that plaintiffs would use to prove their losses related to income and benefits would be documents presumably generated by defendant.

As to back pay, throughout the discovery plaintiffs provided information and documents to show their household's sources of income since they were each terminated. Plaintiffs specifically informed the amounts of alternate benefits and the date in which they began to receive them. Provided that, unlike front pay, back pay does not involve predictions of events yet to come, plaintiffs failure to provide a detailed formula for these elements is harmless to

defendant because plaintiffs disclosed all the necessary elements to be factored in in order to reach a calculation for back pay and loss income or benefits. Moreover, plaintiffs' partial failure under Fed. R. Civ. P. 26(a) regarding back pay will not harm defendant as plaintiffs will not be allowed to introduce into evidence any testimony or document that falls outside the scope of the information disclosed to defendant during discovery. That is, plaintiffs will have to try their case with the information and documents disclosed through discovery.

## IV. CONCLUSION

In light of the above, the Court hereby **GRANTS IN PART** defendant's *in limine* **at ECF No. 81** and precludes plaintiffs from presenting at trial evidence regarding front pay given their failure to comply with discovery obligations and Federal Rules of Civil Procedure. Moreover, while plaintiffs may present their claim for back pay, plaintiffs are precluded from presenting evidence at trial regarding back pay, loss of income and benefits that was not disclosed and produced to defendant during the discovery stage of this case.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of September, 2019.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**